GIOVANNA CEREGHINO, Appellant, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, and CONSOLIDATED WAGON & MACHINE COMPANY, a Corporation, Respondents.

No. 1463.   (73 Pac. 634.)

1. **Railroads: Switches in Street for Private Business: Authorization by City Council.**
A city council can not authorize a permanent switch track, for a private business only, along a street and across a sidewalk, from a steam railroad in the street, to the detriment of people residing on the street, and to the damage of their abutting property; the streets being dedicated to public use.

2. **Same.**
Under Revised Statutes 1898, section 206, as amended by Session Laws 1901, page 133, chapter 124, and section 207, Revised Statutes 1898, providing that the power of a city council to grant franchises to railroad companies to maintain track in a street can only be exercised by ordinance duly passed, or resolution or by-law enacted in the same way, a resolution conferring the right, to be valid, must be passed in accordance with the formalities provided by law.

3. **Same: Injunction: By Private Citizen.**
In case of a railroad track about to be laid, in a street and across a sidewalk without lawful authority, and in such a way as to become a public and private nuisance, a private citizen specially damaged may have the threatened damage enjoined independently of, as well as under Revised Statutes 1898, section 3506.[1]

(Decided September 12, 1903.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall*, Judge.

[1]Henderson v. Ogden City Ry. Co., 7 Utah 199, 26 Pac. 286; Ogden City Ry. Co. v. Ogden City, 7 Utah 207, 26 Pac. 288; Dooly Block v. Rapid Transit Co., 9 Utah 31, 33 Pac. 229, 24 L. R. A. 610.

Action to obtain a permanent injunction against the defendant railroad company to prevent the construction and operation of a switch track in front of the plaintiff's premises in Salt Lake City. From a judgment in favor of the defendants, the plaintiff appealed.

REVERSED.

*Messrs. Richards & Varian* for appellant.

The city council had no delegated power to grant a franchise to burden the street of the municipality with a switch to be operated as a steam railway for the private purposes of a private corporation. While the power to authorize obstructions may be delegated to municipal corporations, the right to license or maintain a nuisance in the streets is not within the power. "Even where a city is given exclusive power over its streets, such power must be exercised for the good of the general public, and the city can not authorize obstructions in its streets for merely private purposes." Elliott, Roads and Streets (2 Ed.), sec. 653; Costello v. State (Ala.), 18 So. 420.

"A municipal corporation can not grant a right to construct a railroad in a street for private use. We suppose it to be indispensable to the validity of a direct legislative grant, that in every instance, the use should be public, for highways are held in trust for the public for public purposes and no other. This rule is clearly the legitimate sequence of the fundamental principles that private property can never be seized under the power of eminent domain, for merely private purpose, and that roads and streets are held for the public use and never for private purposes." Elliott, Roads and Streets, sec. 744; Macon v. Harris, 75 Ga. 761; Glaessner v. Anheuser-Busch Co., 100 Mo. 508, 13 S. W. 707, Mikesell v. Durkee, 34 Kan. 509, 9 Pac. 278; Smith v. Leavenworth, 15 Kan. 81; Sholl v. German Coal Co., 118 Ill. 427, 10 N. E. 199.

"A switch or spur track built by private parties to connect a railroad with a mill, factory or quarry, is a private use, and a switch or spur built by a railroad company to a single mill or factory, and really designed for the accommodation of such mill or factory, is generally held to be a private use. But, where the switch or spur reaches and accommodates a number of mills, quarries or other establishments, it is held a public use." 1 Lewis, Eminent Domain (2 Ed.), sec. 171, p. 439; Gustafson v. Hamm, 56 Minn. 434, 57 N. W. 1054; Pittsburg, etc., R. R. Co. v. Benwood Iron Works, 31 W. Va. 71, 8 S. E. 453-67; Kyle v. Texas N. & N. R. R. Co., 3 Tex. Civ. App. 518.

To say that, in the case at bar, private parties do not build the switch, is but sticking in the bark. The law may not be evaded by granting the franchise to a public corporation, for the purpose of working out, through it, a private benefit and use. "It is clearly contrary to public policy that a franchise granted for public purposes, should be used as a mere cover for a private enterprise." Fanning v. Osborne, 102 N. Y. 448; Commonwealth v. Frankfort, 92 Ky. 149, 17 S. W. 288; Green v. Portland, 32 Me. 431; People v. Pittsburg R. R. Co., 53 Cal. 694.

The plaintiff shows a special injury in the premises, and is entitled to maintain a suit to enjoin the railroad company. That the free and unobstructed entrance from the street to one's premises is a property right, being an easement appurtenant to the abutting realty, and that continuous infractions of such right entitles the injured party to relief in equity, is settled beyond controversy. Donovan v. Pennsylvania Co., 120 Fed. 219.

This is the general rule of law, as established by all of the authorities. Let us see what the law is in this State. This court has held, in accord with the trend of modern decisions, that, where a street is unreasonably obstructed by a street railway, pursuant to an ordinance attempting to grant the power, that if the ob-

struction is unreasonable, the grant is invalid, as being in excess of the powers of the council; and therefore sustained the remedy by injunction at the suit of an injured abutting owner. Dooly Block v. Rapid Transit Co., 9 Utah 31.

The case was much closer upon the facts than the one at bar. Plaintiff might well rest her right upon the decision in that case. But, section 3506, Revised Statutes 1898, also furnishes full authority for plaintiff's action.

*P. L. Williams, Esq., Geo. H. Smith, Esq.,* and *James H. Moyle, Esq.,* for respondents.

As bearing upon and supporting the proposition that appellant has a complete remedy at law, we cite the following cases: Lorie v. North Chicago City Ry. Co., 32 Fed. 270; Penn. Mut. Life Ins. Co. v. Heiss, 141 Ill. 45; s. c., 33 Am. St. Rep. 273; Chicago & W. Ind. Rd. Co. v. Ayers, 106 Ill. 511; Osborne v. Mo. Pac. Ry. Co., 147 U. S. 248; 3 Elliott on Railroads, sec. 1096.

### STATEMENT OF FACTS.

Plaintiff brought this action to procure a permanent injunction against the defendant railroad company to prevent the construction and operation of a switch track in front of her premises in Salt Lake City. A temporary restraining order was issued by the court, and, after taking evidence, the court found the issues in favor of defendants, and vacated and set aside the temporary injunction, and dismissed plaintiff's complaint.

The findings of fact, so far as material to the determination of the questions raised by this appeal, are as follows:

"(2) That the plaintiff was at the time of the institution of said action, and for a long time prior thereto had been and is still, the owner of lot eight (8) in block

eleven (11), plat 'A,' Salt Lake City survey, situated in the city and county of Salt Lake, State of Utah, and occupies the same, by her tenants, for residence purposes. The plaintiff has heretofore subdivided said lot 8 into four subordinate lots, and upon three of said subordinate lots, from the south of the north line of said lot 8, has erected three brick houses, all fronting upon Third West street, and towards the east; that each of said houses for a long time has been and now is occupied by a respectable tenant, paying rent for the two southerly houses twelve dollars a month each, and for the third house the sum of fifteen dollars per month; that said north house was erected by the plaintiff about twenty years ago; that the property of plaintiff, as aforesaid, is worth several thousand dollars; that said defendant Oregon Short Line Railroad Company, at the time of the filing of the complaint herein, and it and its predecessors in interest for more than thirty years prior thereto, had owned and operated, and it still owns and is operating, a main line of railroad in Third West street in said city, and passing in front of said lots of said plaintiff and of said defendant the Consolidated Wagon & Machine Company; that prior to the institution of this suit the said defendant railroad company had determined to begin and had begun the work of extending a spur track from said main line of said railroad, beginning at a point about opposite the third and southerly house owned by plaintiff, and extending thence in a southerly and westerly direction by a curved line across the westerly part of said Third West street and the west sidewalk thereof into the said lot of the defendant, the Consolidated Wagon & Machine Company, and along the northerly side of a large warehouse which the said defendant had begun to construct prior to the institution of this suit for the purpose of accommodating its wagon and machine business; that the inner rail of said proposed spur track or switch will enter upon said sidewalk at a point about fifteen feet from the northeast corner of plaintiff's said lot; that the sidewalk

along the west side of said street is about twelve feet in width, and the street between Seventh and Eighth South streets, including the sidewalks, is one hundred and thirty-two feet in width, and the said main line of railway of the defendant railroad company is located about five feet west of the center line of said street.

"(3)    That the said defendant railroad company has already in operation a switch track connecting with its said main line on Third West street, opposite the southerly side line of the plaintiff's said lot, and running thence in a southwesterly direction, passing near the southeast corner of said block 11, and there entering upon the west sidewalk of said street and running thence across Eighth South street and crossing diagonally the line of said sidewalk on the westerly side of said Third West street and into the northeast corner of the block lying immediately south of said block 11 to a brickyard plant, the same being a private business; that said switch track has been and now is being operated by said railroad company; that said railroad company has another switch track connecting with its said main line on Third West street running in a southeasterly direction from the east side thereof across the easterly portion of said street and the east sidewalk thereof into the block on the east side of said street to a business plant, which said track has heretofore been and now is operated; that said railroad company has another switch track connecting with its said main line on said Third West street on the west side thereof, beginning at a point about fifteen rods north of the plaintiff's said lot, and running in a northwesterly direction to or near the edge of the sidewalk opposite the northeast corner of said block 11, and thence running northwesterly across Seventh South street into the block on the north side thereof to the plant and power house of the Consolidated Railway & Power Company.

"(4)    That the said defendant the Consolidated Wagon & Machine Company was at the time of the beginning of this action, and for a long time prior thereto

it and its predecessors in interest had been, and is still, the owner of lot 7 in said block 11, plat 'A,' in said city, and that said lot joins the plaintiff's lot upon the north side thereof; that the warehouse which the said defendant the Consolidated Wagon & Machine Company had begun to erect prior to the institution of this suit for the purposes of its business is three hundred feet in length and ninety-four feet in its greatest depth; that it receives in carload lots over the lines of said defendant railroad at Salt Lake City, Utah, from one hundred and twenty-five to one hundred and fifty car loads of such merchandise per annum; that the said defendant has also entered into a contract with the American Steel & Wire Company, of Chicago, Illinois, whereby it has undertaken to furnish said company with warehouse room in said warehouse for its merchandise, and to handle the business of said steel and wire company in the State of Utah for the period of five years next ensuing; that the said defendant contemplates and expects to handle annually hereafter from three hundred to six hundred carloads of freight for said steel and wire company, to be delivered to it by the defendant railroad company over and by means of the proposed switch track mentioned in finding No. 2 herein.

"(5) That the city council of said city by resolution granted permission to the said defendant railroad company to construct said switch track from its main line across the westerly side of said Third West street and the sidewalk on the west side thereof; that the only application for such permission made by the said defendant railroad company was made by petition in writing on the 3d day of November, A. D. 1902, at a regular session of the common council of Salt Lake City.

"(6) That the city council of said city by resolution granted permission to said defendant railroad company to construct said switch track from its said main line across the westerly side of said Third West street and the sidewalk on the west side thereof. That

the construction of said switch track is within the charter powers of the said defendant railroad company.

"(7) That the construction of said switch track into said lot of said Consolidated Wagon & Machine Company, as set forth in the plaintiff's complaint herein, will not cause unreasonable obstruction to the ordinary use of said street and sidewalk for public travel, nor will the plaintiff's right of access to her said premises or that of her said tenants be unreasonably impeded thereby, nor will the operation of said track as contemplated by a line of steam railway impose a deadly or other unreasonable peril to life or limb to persons living upon said street, or particularly to children or other persons using said street and sidewalk; and the court further finds that said switch track as proposed will not be a public or private nuisance.

"(8) That the construction and operation of said switch track for the uses aforesaid will not impose upon the plaintiff's property the additional or any burden because of obstruction of standing freight cars thereon to such an extent as to seriously diminish the value of the plaintiff's property, or to substantially destroy the value thereof; that the construction and operation of said switch track in the manner aforesaid will not be the taking of the plaintiff's property, nor will it irreparably damage the same, or the plaintiff's estate therein."

As a concluson of law the court found: "(3) That the said plaintiff has a complete and adequate remedy at law for any damage resulting to her property and estate in consequence of the construction and operation of said switch track."

In addition to those found by the court, the undisputed evidence in the case shows the following facts: Freight cars are frequently left standing by defendant railroad company on the switch tracks to the south of plaintiff's premises and across the sidewalk and footpaths where such walks or paths cross the streets at the intersection of Third West and Eighth South streets, thereby compelling plaintiff and her tenants and other

people who may chance to pass these sidewalks at such times to leave them, and take to the main part of the street, and on some occasions to walk through mud, in order to pass around such freight cars. Each of plaintiff's tenants has a family of small children, some of whom are of school age, and in going to and returning from school they pass along the sidewalk in front and to the north of plaintiff's premises, across which walks the defendant railroad company intends to build the proposed switch tracks; and each of these tenants has declared his intention to vacate the premises should the switch tracks be constructed and operated as contemplated, and some of them have so notified the plaintiff, claiming (which claim is supported by the evidence) that the construction and operation of the switch would greatly increase the inconvenience and danger to them and their families in going from and returning to their homes, as the only avenue of access and egress to and from the premises would be over and across some part of the network of railroad tracks which will directly and closely inclose plaintiff's property, as fully appears from the following diagram of the property, streets and railroad tracks mentioned, which map was introduced in evidence, and made a part of the bill of exceptions:

Cereghino v. Oregon Short Line R. R. Co.

There is another switch track extending from the main line of the Denver & Rio Grande Western Railway Company's railroad track into and near the center of block 11, hereinbefore mentioned in the findings of fact, and which terminates in the vicinity of the west end of the lot upon which the warehouse referred to is being erected, and it is the intention of the Consolidated Wagon & Machine Company to either have this last-mentioned switch track extended, or an independent switch constructed from the Denver & Rio Grande Western Railway Company's main line to the west end and around to the north side of its warehouse. Plaintiff appeals.

McCARTY, J., after stating the facts delivered the opinion of the court.

There are two questions involved, which are decisive of this case. The first is, has a city council delegated power to grant a franchise which will burden the streets of a mu_____ with a switch track to be operated by a steam railway exclusively for the convenience and private use of a private corporation, to the detriment of the citizens residing on such street, and damage to their property abutting thereon? And the second is, can a private citizen, whose property abuts upon the street where the switch is proposed to be constructed, and which property would be specially damaged thereby invoke the equity power of a court to restrain and prevent the threatened injury?

The public streets of a city are dedicated to and held in trust for the use of the public, and, while there are many kinds of temporary uses of a private character that may be and are daily made of portions of them, it is well settled by the great weight of authority that a city council has no power to grant a franchise or a permit to an individual or corporation authorizing such person or corporation to make a permanent use of a public street for exclusively private purposes, to the detriment of the public and damage to

private property abutting upon such street. Wood v.
Mears, 12 Ind. 515, 74 Am. Dec. 222; 2 Dillon, Mun.
Cor., 660; Callahan v. Gilman (N. Y.), 14 N. E. 264, 1
Am. St. Rep. 840. The record shows that, while the
railroad company applied to and obtained a permit from
the city council to build the proposed switch, it did so
at the request of the defendant Consolidated Wagon
& Machine Company, and that the switch is intended
for the sole and exclusive use, benefit, and convenience
of the last-mentioned company. The petition on which
the permit was granted recites in part as follows: "Said
track so proposed to be constructed to be for the accom-
modation of the business transacted at said warehouse."
The switch is not only intended exclusively for private
purposes, but its construction and operation in connec-
tion with that of the main line and the three other
switches now being operated in the vicinity of plaintiff's
premises would be an unreasonable, and, we might add,
an unlawful, use of the street, as it would, in effect, be
almost entirely appropriated in aid of a strictly private
enterprise, thereby diverting it from the uses for which
it is held in trust, to the detriment of the public, and
irreparable damage to plaintiff's property abutting
thereon, which property, as shown by the record, would
be greatly impaired, if not entirely ruined, for resi-
dence purposes. The public at large have an interest
in the construction and successful operation of rail-
roads designed for the transportation of passengers and
freight, and because of this interest the defendant rail-
road company, in common with all others, is given the
right to invoke the law of eminent domain, and subject
private property to its necessary public uses; but it has
no right, either under the law of eminent domain or a
pretended franchise from a municipality, to directly or
indirectly take private property for the purpose of
building a line of railway or a switch track designed
and intended to be used exclusively for the conven-
ience and accommodation of a private business. And
as stated by counsel for the appellant in their brief,

"Neither can it subject the streets and sidewalks of a municipality, dedicated to public uses of the people, to additional servitudes or burdens in aid of private undertakings and enterprises." Mr. Elliott, in his work on Roads and Streets, sec. 744 (2 Ed.), thus tersely, and, as we think, correctly, states the rule: "A municipal corporation cannot grant a right to construct a railroad in a street for private use. We suppose it to be indispensable to the validity of a direct legislative grant that in every instance the use should be public, for highways are held in trust for the public, for public purposes, and no other. This rule is clearly the legitimate sequence of the fundamental principles that private property can never be seized under the power of eminent domain for merely private purposes, and that roads and streets are held for the public use, and never for permanent private purposes." Hibbard, Spencer, Bartlett & Co. v. City of Chicago, 173 Ill. 98, 50 N. E. 256, 40 L. R. A. 621; Commonwealth v. Frankfort, 92 Ky. 149, 17 S. W. 287; Townsend v. Epstein (Md.), 49 Atl. 629, 52 L. R. A. 413, 86 Am. St. Rep. 441; Van Witsen v. Gutman, 79 Md. 405, 29 Atl. 608, 24 L. R. A. 403; Pittsburg, etc., R. Co. v. Iron Works, 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; St. Louis, I. M. & S. Ry. Co. v. Petty (Ark.), 21 S. W. 885, 20 L. R. A. 434.

It appears from the record that the permit to construct the switch track in question was granted at the same session of the city council that the petition therefor was presented. The resolution granting the permit is as follows: "No. 717. Oregon Short Line R. R. Co. Permission to construct a track on Third West Street and west to the warehouse of the Consolidated Wagon and Machine Company, between Seventh and Eighth South streets. On motion of Councilman Eardley the petition was granted." It will thus be observed that the city council, by resolution, has, in effect, granted the defendant railroad company a permanent franchise to construct and operate a steam railway on one of the public streets of the city, without any condi-

tions imposed as to the grade of the track or the manner of construction, and without any regulations as to its maintenance and the operation of the trains and cars to be moved over it.    This is not only an unreasonable, exercise of discretion on the part of the city council, but is in violation of the provisions of section 206, Revised Statutes 1898, as amended by Sess. Laws, 1901, p. 133, c. 124, and section 207, Revised Statutes 1898, which provide that the power of a city council to grant franchises to railroad companies to maintain and operate railroad tracks in any of the public streets of a city can only be exercised by ordinance duly passed, or resolution or by-law enacted in the same way. The power thus granted being legislative in character, it follows that an ordinance, resolution, or by-law by which it is exercised must be passed in accordance with the formalities required by law.    The reason and necessity for this legislative requirement are very apparent.    It gives people residing on or owning property in the locality of the proposed railway an opportunity to be heard in the matter, and to furnish information to the council, and, if their interests or that of the public demand it, make objection, and enter such protest as the circumstances and conditions may warrant.    An opportunity for the people interested to be heard in matters of this kind is a right that must be maintained and kept inviolate. West Jersey Traction Co. v. Shivers (N. J. Sup.), 33 Atl. 55; Indianapolis v. Miller, 27 Ind. 394.

It is argued by counsel for respondents that "the injury to plaintiff is no greater nor in any way different whether the grant from the city is valid or invalid," and that the municipality alone can successfully make objection on this ground, and therefore plaintiff's only remedy is by an action at law for damages.    There is a marked distinction between a railroad track about to be laid on a public street in pursuance of a franchise lawfully granted and one about to be constructed without lawful authority and in such a way as to become a public and private nuisance.    In the one

case the private citizen has no remedy save in an action at law for damages, but in the other, if he can show special damages, a court of equity will enjoin the threatened injury. 2 Dillon, Mun. Cor. (4 Ed.), 708; 1 Lewis, Eminent Domain (2 Ed.), sec. 117b; Henderson v. Ogden City Ry. Co., 7 Utah 199, 26 Pac. 286; Ogden City Ry. Co. v. Ogden City, 7 Utah 207, 26 Pac. 288; Dooly Block v. Rapid Transit Co., 9 Utah 31, 33 Pac. 229, 24 L. R. A. 610; 23 Am. and Eng. Ency. Law (1 Ed.), 958, 959; Penn. R. Co.'s Appeal (Pa.), 5 Atl. 876; Blanc v. Klumpke, 29 Cal. 160; Hargro v. Hodgdon, 89 Cal. 628, 26 Pac. 1106. Not only does the weight of judicial authority support this doctrine, but in this State we have a statute which gives the right of injunctive relief in cases such as the one under consideration. Section 3506, Revised Statutes 1898, provides that: "Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered." Practically the same questions here presented were raised and decided in the case of Dooly Block v. Rapid Transit Company, supra. In that case the Rapid Transit Company obtained a franchise to construct a track for a street railway on one of the public streets of Salt Lake City, upon which there already existed a double track owned and operated by another company, which tracks furnished ample facilities for all cars necessary for public convenience. The plaintiffs in that case commenced an action in equity to enjoin the Rapid Transit Company from laying the track, alleging that an additonal track upon that particular street, as contemplated, would materially depreciate the value of their property abutting thereon. The

26 Utah 31

trial court found the issues in favor of the plaintiffs, and entered judgment perpetually restraining the defendant Rapid Transit Company from laying its track. On appeal, this court, after a very thorough and exhaustive discussion of the questions therein involved, affirmed the judgment of the trial court, holding that an additional track would be an unreasonable obstruction to and interference with the ordinary use of the street, and "that the act of the city council of Salt Lake City [granting the franchise] was unlawful, as being an unreasonable exercise of discretion." If the doctrine announced and conclusions reached in that case are sound and correct —and we think they are—it necessarily follows that appellant must prevail herein, as the facts in the case now before us show a much more unwarrantable and indefensible invasion of public and private rights than was there attempted.

That part of the sixth finding of fact which reads "that the construction of said switch track is within the charter powers of the said railroad company," and the seventh, eighth, and ninth findings of fact, and the third conclusion of law are erroneous, as the same are not supported by evidence and the facts.

The case is reversed, with directions to the trial court to set aside the judgment rendered and enter judgment for appellant, perpetually enjoining respondent railroad company from constructing the switch track in question. Costs to be taxed against the respondent.

BASKIN, C. J., and BARTCH, J., concur.