Appeal from Fourth District.

JORDAN v. UTAH RAILWAY CO.

No. 2844.   Decided Feb. 8, 1916.   (156 Pac. 939.)

1. EMINENT DOMAIN—REMEDIES OF PROPERTY OWNERS—PROOF OF TITLE BY OWNER. In an action against a railroad for damages to abutting property, plaintiff's title is *prima facie* proved by possession under a deed purporting to convey a fee, or even by possession under claim of title.[1]   (Page 522.)

2. EMINENT DOMAIN—SUIT BY OWNER—DAMAGES—CINDERS AND SMOKE. The casting of cinders on and the emission of engine smoke passing over land abutting a railroad, in connection with other elements affecting the value, may be considered by a jury determining the depreciation of value of the land in a suit by the owner.[2]   (Page 523.)

3. EMINENT DOMAIN—SUIT BY OWNER—DAMAGES—CINDERS AND SMOKE. The casting of cinders on and the emission of engine smoke passing over land abutting a railroad should not be considered by a jury in a suit by the owner as separate and distinct elements of damage.   (Page 523.)

4. EMINENT DOMAIN—SUIT BY OWNER—DAMAGES—NOISE. In a suit by owner of abutting land against a railroad for damages from construction and operation, noises incident to operation should not be considered at all by the jury as an element in determining the depreciation in value of the land.[3]   (Page 523.)

5. EMINENT DOMAIN—SUIT BY OWNER—DAMAGES—NOT IN ISSUE. In a suit by owner of abutting land against a railroad for damages from construction and operation, elements of damages not claimed in the complaint cannot be considered by the jury in determining the depreciation in value of the land.   (Page 523.)

6. EMINENT DOMAIN—SUIT BY OWNER—DAMAGES—ALTERATION OF STREET GRADE. In a suit by owner of abutting land against a railroad for damages from its construction, alleging interference with ingress and egress, defendant is liable for grading the street in front of plaintiff's premises, made necessary by elevat-

[1]*Cottrell* v. *Pickering*, 32 Utah, 62, 88 Pac. 696, 10 L. R. A. (N. S.) 404.

[2]*Morris* v. *Railroad*, 36 Utah, 14, 102 Pac. 629; *O'Neill* v. *Railroad*, 38 Utah, 475, 114 Pac. 127.

[3]*Church* v. *Railroad*, 36 Utah, 238, 103 Pac. 243, 23 L. R. A. (N. S.) 860, 140 Am. St. Rep. 819.

ing the railroad grade, and interfering with plaintiff's ingress and egress. (Page 530.)

7. EMINENT DOMAIN—SUIT BY OWNER—CORPORATION LIABLE. A railroad company which has leased a railroad to another company and is not operating it itself is nevertheless liable for depreciation of abutting property values by reason of cinders and smoke cast thereon, under Const. art. 12, section 7, that no corporation shall lease a franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor. (Page 531.)

Appeal from District Court, Fourth District; *Hon. A. B. Morgan*, Judge.

Action by E. N. Jordan against Utah Railway Company.

Judgment for plaintiff. Defendant appeals.

REVERSED, and new trial granted.

*Thurman, Wedgwood & Irvine*, for appellant.

*Parker & Robinson*, for respondent.

## REPONDENT'S POINTS.

To interfere with, or destroy any right appurtenant to property, is a taking within the Constitution. (Lewis on Eminent Domain, Third Edition, Section 223 and Section 65.) An easement is subject to Eminent Domain power. (Lewis on Eminent Domain, Third Edition, Section 412.) An easement is property the same as land. This being so, and the Constitution providing that PROPERTY should not be taken or damaged without just compensation, then it would seem that there should be no reason why a different rule should be applied in assessing the damages where an easement has been taken or interfered with, than there would be where the land is actually taken. (*Morris v. O. S. L. Railroad Company*, 36 Utah, 14, 103 Pac., page 629; *O'Neill v. San Perdo, L. A. & S. L. R. R. Co.*, 38 Utah, 475, 114 Pac., page 127; 22 *Corporation v. Oregon Short Line R. R. Co.*, 36 Utah, 238, 103 Pac., page 243.) The right to recover is based upon the existence

of an easement of access, light and air in the street, which is appurtenant to the adjacent lot and is property within the meaning of the Constitution. When this easement is interfered with, it is a taking and the owner is entitled to compensation to the extent of the taking, that is, to the extent that the interference with the easement in question depreciates the value of the property. Some of the cases limit the recovery to such depreciation and deny the right to recover the entire depreciation, due to the railroad in the street. Other cases permit a recovery to the extent of the differenence in value before and after the construction of the railroad as effected by the railroad. This rule of damages may be justified on the ground that an interference with an easement appurtenant to property, whereby the same is impaired or destroyed, should be treated like any other case of partial taking, and, therefore, as entitling the owner of property to which the easement is appurtenant, and of which it is parcel, to recover not only the value of the easement to the property, but damages to the property by reason of the taking or interfering with the easement for the purpose proposed. (Lewis on Eminent Domain, First Edition, Sec. 493.)

FRICK, J.

The plaintiff sued the defendant to recover damages which he alleged he sustained to his residence property by reason of the construction and operation of a certain railroad, which, it is alleged, is owned and operated by the defendant. The only allegations of the complaint complained of, which are material here, are the following:

"That by the construction of said railroad tracks by the defendant, and the operation of trains thereon, the above-described tract of land which is particularly described has been permanently injured because of the cinders, smoke, and noise, incident to the operation of said steam railroad; and for the further reason that it is difficult to obtain proper ingress and egress to and from said premises; thereby causing the market value of said premises to depreciate in the sum of $1,000, and thus damaging plaintiff in said sum of $1,000."

The defendant answered the complaint, and, after admitting

that it had constructed and owns the line of railroad mentioned in the complaint, it specifically denied that it operated the same; denied all the allegations above set forth; and further denied that by any act of the defendant the plaintiff was damaged, and, upon the ground of want of knowledge or information, denied the ownership of the property in question.

Upon substantially the foregoing issues a trial to a jury resulted in a verdict for the plaintiff in the sum of $300. Judgment was duly entered upon the verdict, and the defendant appeals.

Defendant assigns error because the court did not direct the jury to return a verdict in its favor upon the ground that the plaintiff had failed to prove that he was the owner of the property in question. Upon that question the plaintiff produced the following evidence. After testifying in general terms that he was the owner and for some years prior to the construction of the railroad had been, and then **1.** was, in the possession of the property in question and had made certain improvements thereon, he produced a deed wherein one Eunice Ann Jordan was the grantor and the plaintiff was the grantee. The plaintiff did not trace his title to its original source, nor did he prove in express terms that his grantor was ever legally invested with the title. No evidence of any kind was produced by the defendant regarding the title; neither did it, nor does it now, claim any interest in the property in question. It, however, contends that the proof of title is insufficient in a case like the one at bar.

The deed in question was acknowledged in the name of Eunice Ann Jacobson, and not in the name of the grantor as Eunice Ann Jordan. That, it is claimed, is such a defect that made the deed a nullity. It may well be that the acknowledgment was so defective as to vitiate the same. Under our statute, however (Comp. Laws 1907, Section 1975), a deed as between the parties and those having notice thereof is good without any acknowledgment. The plaintiff was in the actual possession of the property at, and long before, the time the railroad was constructed. That fact constituted notice to the defendant of whatever rights he may have had or claimed in the property. If, therefore, the deed be regarded as not hav-

ing been acknowledged at all, it was still good for the pur-
poses of passing the title as between the parties.

In referring to the proof of title in actions like the one at
bar the author of Lewis' Eminent Domain (3d Ed.), Section
661, says:

"Whenever it is necessary for the owner to prove title, a *prima
facie* case is made out by proving possession under a deed purport-
ing to convey a fee, *or even by proving possession claiming title."*
(Italics ours.)

The cases pro and con to both the foregoing propositions
are collated by the author in the footnotes to said section.
While there is some diversity of opinion upon the subject,
yet both propositions are supported by what we deem the
great weight of authority. This court is also committed to
the doctrine stated in the foregoing text. *Cottrell* v. *Pick-
ering*, 32 Utah, 62, 88 Pac. 696, 10 L. R. A. (N. S.) 404. The
rule as it is stated in the foregoing text is discussed in the
opinion in that case, and the authorities in support thereof
are reviewed.

We are of the opinion that the proof of title was, *prima
facie*, sufficient; and especially so in view that the defendant
offered no objection to plaintiff's evidence of title, and offered
no objection whatever except to request a directed verdict
upon the ground that there was no proof of title. The dis-
trict court, therefore, committed no error in refusing the re-
quest.

A more serious question arises, however, upon the admission
of evidence over the objection of the defendant. As
appears from the complaint the damages are alleged to **2-5**
have been caused by "the cinders, smoke, and noise,
incident to the operation of said steam railroad; and for the
further reason that it is difficult to obtain proper ingress and
egress to and from the premises."

So that a complete undedstanding may be had respecting
the relative location of plaintiff's property, which contains a
fraction less than an acre of ground, and the railroad in ques-
tion, we append the following plat:

The broken lines indicate the boundaries of. defendant's
right of way, which is seventy-five feet in width. The line
marked "M-L" is the main line, and the line marked "S-T"
is the side track. The main line is thirty-five feet from the
corner of plaintiff's lot, no part of which was taken for a
right of way. The nearest corner of plaintiff's dwelling house,
marked "H," is ninety-three feet from the side track and
108 feet from the main line. The space marked "S-S" is a
narrow lane or street running in front of plaintiff's prop-
erty about thirty feet in width. The open space marked
"d" at the northeast corner of plaintiff's lot is a driveway
through which he entered and departed from the lot with
teams and wagons, and the smaller opening marked "g" is a
small gate used for plaintiff and his family to pass through.
Plaintiff's house is about one mile from the station. Before
the railroad was constructed there was a natural rise in the
street north of plaintiff's lot from west to east of about
two feet from a point opposite plaintiff's small gate to a
point a little west of the side track. When the railroad track
was constructed the natural surface of the ground was raised
three or more feet. After the railroad grade was completed
the defendant graded the street in front of plaintiff's prop-
erty so that the rise in the street from a point a little west of
plaintiff's small gate to the center of the main track is a little

over five feet. This grading caused a somewhat abrupt rise of about four feet, plaintiff says, in front of his driveway, which prevents him from driving in and out of said driveway without constructing an incline or grade southward some distance into his lot. By reason of the grading of the street as aforesaid plaintiff's ingress and egress to and from his lot with a team and vehicle is therefore impeded. Before the railroad was constructed and the street graded, plaintiff's gate at the driveway could be swung either in or out at pleasure, and he had no difficulty in driving through the gate and passing onto and along the street.

The foregoing measurements, except the one in front of plaintiff's driveway, are taken from the defendant's survey. While plaintiff's witnesses gave the grade as being a little higher, and also differed somewhat in distances, it is clear that those witnesses merely gave their best judgment, and hence the measurements, as they are stated above, may be taken as practically correct.

Defendant's counsel objected to the questions propounded to plaintiff's witnesses for the reasons: (1) That the witnesses in testifying to the depreciation in the value of plaintiff's property by reason of the construction and operation of the railroad in question were not limited to the elements of damage stated in the complaint, namely, cinders, smoke, noise, and the impeded ingress and egress to and from the premises in question by reason of the grading of the street which was made necessary by the railroad grade; and (2) because those witnesses were permitted to testify that the premises were depreciated in value by reason of cinders being cast thereon as an independent element, and by reason of smoke emitted from the engines passing over them as another independent element, and by reason of the noise of the engine in the operation of the engines and cars over the tracks as a third independent element. Counsel therefore insist: (1) That all the evidence respecting the cinders, smoke, and noise should have been excluded; and (2) that at all events the witnesses should not have been permitted to consider elements not stated in the complaint. Counsel also separately objected to any evidence respecting the noise aforesaid.

As to the first, it is clear from the evidence that plaintiff's witnesses were permitted to, and did, consider the casting of cinders upon plaintiff's lot as a separate and distinct element of damages, which, in their judgment, depreciated the value thereof to a certain amount; and the same is likewise true respecting smoke and noise. In addition to that, those witnesses were permitted to, and did, consider the fact that the trains sometimes stood still on the crossing for a little while and in that way prevented plaintiff from passing either to or fro over the crossing at will, and this was also admitted as a separate and independent element of damages. They were also permitted to consider any other element that, in their judgments, might affect the value of plaintiff's property, such as danger from setting fire in operating the engines, etc.

Plaintiff's counsel defend the court's rulings, and attempt to sustain them by what they contend is said in *Morris* v. *Railroad*, 36 Utah, 14, 102 Pac. 629, and in *O'Neill* v. *Railroad*, 38 Utah, 475, 114 Pac. 127. There is absolutely nothing in the opinion in the O'Neill Case which lends any color to counsel's contentions, and there really is nothing in the Morris Case which does so. It is true that in the Morris Case the question respecting what elements might be considered in such cases affecting the value of the property in question was more particularly referred to than in the O'Neill Case. While the question of noise is referred to in the Morris Case, and it is there said that the court's ruling did not constitute error, yet the question was not directly presented, as it is in this case. In that case the defendant's counsel objected to the introduction of a number of elements, all covered by one objection, some of which were not objectionable, and hence the court's ruling in refusing to sustain the objection could not be held erroneous. Moreover, it clearly was made to appear that the plaintiff in the Morris Case did not claim that she was entitled to damages for noise as an independent element, but all she there attempted to prove was that the tracks, as laid, and the trains, as operated, tended to depreciate the value of her property. Again, both in the Morris and in the O'Neill Case the evidence showed considerable physical in-

jury to the houses situated on the premises in question, which injury was caused by the vibratory effect of operating the very many heavy engines and trains which daily, almost hourly, passed within short distance of the buildings. In the Morris Case the use of the property was also greatly affected, in that the ingress and egress to and from the same was impeded both by the tracks and by the trains. In the Morris Case we referred to cases wherein it is held that noises may be shown. In the cases referred to, however, it is also held that neither the emission of smoke, nor that as an incident to the operation of trains much noise resulted, can be shown as a separate and independent element of damages. In the Morris Case we specially referred to *Weyer* v. *C., W. & N. Ry.*, 68 Wis. 180, 31 N. W. 710, and to *Omaha S. Ry.* v. *Beeson,* 36 Neb. 361, 54 N. W. 557. In some cases it is held that those elements may be shown to meet the evidence of special benefits where such benefits are claimed. See *Pennsylvania Ry. Co.* v. *Lippincott,* 116 Pa. 472, 9 Atl. 871, 2 Am. St. Rep. 618. While the courts are not in strict harmony with regard to whether noises incident to the operation of trains may be shown in connection with other things, yet the courts are practically a unit that noises which are incident to the operation of engines and trains may not be considered as a separate and independent element of damages. Those courts which permit noises to be shown, however, usually group cinders, smoke, and noises together, and consider them all as falling within one class. This court is committed to a contrary doctrine. In the case of *Church* v. *Railroad,* 36 Utah, 238, 103 Pac. 243, 23 L. R. A. (N. S.) 860, 140 Am. St. Rep. 819, we had occasion to go into the question of whether the noises which are incident to the operation of trains should be considered at all as an element in actions for damages caused by the operation of trains. We there pointed out that there was a real distinction between casting cinders or offensive matter upon property and in polluting the atmosphere with smoke, and the noises which are necessarily incident to the operation of engines and trains. By more mature reflection we have become more strongly confirmed that the doctrine thus announced is sound. What right has a railroad company to cast

cinders or other refuse matter upon an owners' property, and especially property used for dwelling purposes?

In referring to the subject of smoke, Mr. Lewis, in his valuable work on Eminent Domain, Vol. 1, Section 236 (3d Ed.), says:

"The owner of land has a right that the air which comes upon his premises shall come in its natural condition, free from artificial impurities. This right has its correlative obligation, which is that one must not use his own premises in such a manner as to discharge into the atmosphere of his neighbor dust, smoke, noxious gases or other foreign matter which substantially affect its wholesomeness."

Smoke, to some extent, like cinders or other foreign substances, therefore, directly affects the property as well as the enjoyment thereof. Again, smoke is not only offensive and a discomfort, but it is deleterious to health, and in large quantities may become very injurious. Smoke, like cinders, is more or less tangible; and, like cinders, may have more effect on one property adjacent to a railroad than upon another close by. Of course, one would assume that where trains, as in the case at bar, pass by the property in question only one way and are not frequent, the injury from either cinders or smoke could not be great. This, however, is not a question of law, but one of fact. If the value of property is depreciated to any appreciable extent, a cause of action arises, and the extent of the depreciation is for the jury. Noises, however, that are necessarily caused by the operation of engines and trains, are unavoidable and affect all alike who come within their range. Besides, as pointed out in the *Church Case, supra,* those noises arising from the operation of trains which are merely incident to such operation arise from a lawful and a necessary business. To operate trains must necessarily produce noise. While it may be a disturbing element at times, yet it is one that cannot be avoided, and if the noises of the engines and the moving of the trains are to be considered as elements of damage, then all noises which are incident to modern enterprises of all kinds must also be considered. We now think, as we thought when we passed on the *Church Case,* that the noises which are necessarily incident to the operation of moving trains are so unavoidable

and usually so inconsequential, and constitute an element which is suffered by all alike, that they should not be considered at all, either directly or indirectly, as an element in determining the depreciation of the value of property.

By what we have said we do not wish to be understood as holding that noises may not, under certain circumstances, become a nuisance and an element of damage. One can easily conceive that a foundry, a roundhouse, a machine shop, or some stationary institution of like character, might be erected near a dwelling, a school house, a hospital, or a church, which would make it impossible to comfortably live in the first, or to successfully carry on the second, or conduct the third, or to worship in the church. Such workshops would, however, produce noises more or less constantly, and they would emanate from institutions which could as well be erected and operated elsewhere. Railroad trains, however, pass only occasionally and the noise they make is not of that character which may not easily be endured. Millions ride on trains each year and none seem to be seriously affected by the noise. Again, one readily adapts himself to the noise of passing trains. We are of the opinion, therefore, that it is perfectly proper and competent to show as an element affecting the value of property that cinders are cast thereon, and it is likewise proper and competent, and especially where the property is occupied and used for residence purposes, to show that smoke pollutes the atmosphere. We are also of the opinion that it is not proper or competent to show or consider the noise that is necessarily caused as an incident to the operation of engines and trains as an element affecting the value of property. The court, therefore, erred in overruling defendant's objection to plaintiff's evidence whereby he was permitted to show the casting of cinders as an independent and separate element of damages and the emission of smoke for the same purpose. These elements should not be permitted to be shown or considered by the jury as separate and distinct elements of damage. They may, however, be shown and considered in connection with all other proper elements as affecting the value of the property. The measure of recovery is the depreciation of the market value of the property, if any,

produced by the careful construction and operation of the rail-road. Whatever legitimately affects that value may be considered in determining the depreciation or appreciation thereof, but the several elements depreciating the value may not be considered as separate and independent items of damage, as was done in this case. It was, of course, competent for plaintiff's witnesses to state the depreciation of the value of the property, after taking into consideration all the elements which could properly be considered as depreciating its value. The court also erred in admitting the evidence respecting the noise which was incident to the operation of the engines and cars for any purpose. The court also erred in admitting the evidence relating to the standing of trains on the tracks. That was not an issue in the case, and it is a matter which affects others precisely as it does the plaintiff. It is a mere incident arising from the operation of the trains. The court also erred in admitting the evidence relating to the danger from fires. That element could be considered only as it might affect the rates of insurance, as pointed out in the *O'Neill Case, supra*. If fire is caused through the negligent operation of engines or trains, plaintiff has a cause of action for that.

It is also contended that the defendant cannot be held liable for grading the street in front of plaintiff's premises. There is nothing to that contention. Grading the street was made necessary by reason that the railroad grade was elevated. In elevating the railroad track above the natural surface it became necessary to also elevate the street above that surface. In doing that the defendant, as the evidence shows, interfered with plaintiff's ingress and egress to and from his property in the manner and to the extent we have before pointed out. Such interference was directly caused by the railroad grade, and constitutes a cause of action if thereby the value of plaintiff's property is depreciated to any appreciable extent. The court, therefore, properly admitted in evidence the facts respecting the grade of the street, as well as the facts relating to how and to what extent plaintiff's use of his property was thereby affected, for the purpose of showing that his property was thereby depreciated in value.

Finally, it is contended that in view that the defendant does not operate the railroad in question, but has leased it to another company, it is not liable for the depreciation of plaintiff's property, in so far as the value thereof may be depreciated by reason of the cinders and smoke cast **7** thereon and passing over it, since such depreciation arises out of the operation of the engines and trains, and does not arise out of the construction of the railroad. The authorities are not in harmony upon the question of how far a railroad company may relieve itself from liability by leasing its roadbed to another. Our Constitution, Art. 12, Sec. 7, provides:

"No corporation shall lease or alienate any franchise, so as to relieve the franchise or property held thereunder from the liabilities of the lessor, or grantor, lessee or grantee, contracted or incurred in operation, use or enjoyment of such franchise or any of its privileges."

Counsel do not dispute the fact that the injuries that are caused by the cinders and smoke, if any, were necessarily incident to the operation of defendant's railroad. This being conceded, we need not now inquire to what extent the defendant would be liable for the torts, willful or otherwise, of its lessee. We think that, both upon general principles of law (33 Cyc. 703) and under the constitutional provision aforesaid the defendants is liable for any depreciation of the value of plaintiff's property which was caused either in constructing the railroad or as a necessary incident of its operation, although operated by its lessee.

What has been said also disposes of the numerous exceptions to the instructions given as well as to the refusals to instruct as requested.

For the reasons stated, the judgment is reversed; and the cause is remanded to the District Court of Utah County with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs of this appeal.

STRAUP, C. J., and McCARTY, J., concur.