## JOHNSON v. UTAH-IDAHO CENT. RY. CO.

No. 4328.  Decided Sept. 24, 1926.  (249 P. 1036.)

*H. L. Mulliner,* of Salt Lake City, and *Sam. C. Powell,* of Ogden, for appellant.

*De Vine, Howell, Stine & Gwilliam* and *A. W. Agee,* all of Ogden, for respondent.

THURMAN, J.

This is an action to recover damages for the depreciation of the value of plaintiff's property by the construction and operation of defendant's railroad.

Plaintiff's property, consisting of several dwelling houses, outhouses, lawns, trees, flower gardens, and other improvements, abuts on Lincoln avenue, in Ogden City, Utah, and defendant's railroad is constructed along and upon said avenue, and both freight and passenger cars are operated thereon. The road has been so operated ever since the year 1915, when it was constructed on said avenue. It is alleged by the plaintiff that the construction and operation of said

road is without permission, franchise, or authority from Ogden City, and that the manner in which cars, especially freight cars, have been operated thereon for more than three years prior to the commencement of the action in November, 1924, is and has been a permanent nuisance for which plaintiff seeks damages, once for all, for the depreciation of the value of her property.

Without entering into particulars as to the nature of the damage alleged, it is sufficient to say that it is such that plaintiff is entitled to compensation therefor, unless her cause of action is barred by the statute of limitations pleaded by the defendant.

Defendant, by its answer, alleges the construction of the railroad along and upon Lincoln avenue in front of plaintiff's premises by its predecessors in interest in 1915; that it was constructed under and by virtue of a franchise granted by Ogden City in 1914 and other franchise ordinances prior thereto granting to the grantee therein the rights of common carriers; that both freight and passenger cars carrying freight and passengers have been operated thereon ever since the road was constructed, without complaint or protest of Ogden City or any of its officers and without protest or objection on the part of plaintiff. Defendant also alleges that plaintiff is estopped from now claiming damages on account of the construction and operation of said railroad, and pleads in bar the four-year statute of limitations.

A jury was impaneled to try the cause. At the conclusion of the evidence, on motion of defendant, the court directed the jury to find for the defendant no cause of action. The grounds upon which the motion was made and granted are not disclosed by the record. It is inferable, however, that the court was of opinion the action was barred by the statute of limitations pleaded by defendant. Judgment was entered for defendant, and plaintiff appeals.

The theory of appellant's contention, as appears from counsel's brief, seems to be that this is an action for damages caused by a nuisance, and that the statute of limitations

never runs against such an action. The plaintiff, however, is suing for damages for the depreciation of the value of her property caused by the construction and operation of the railroad, and she is suing for such damages as she would be entitled to if this were an action by the railroad company to condemn her property for railroad purposes. It is not an action to abate a nuisance, nor is it an action for some special and extraordinary injury occurring within the period of limitations. She bases her right to compensation upon the constitutional provision which prohibits the taking or damaging of private property for public use without compensation, upon which provision she specifically relies in her complaint. This is the basis of her action not only as appears from the complaint, but the evidence introduced by plaintiff on the question of damages sustained by her was directed solely to the difference between the value of her property without the railroad in front of her property and with the railroad, as it was constructed and operated. The evidence is uncontradicted that the road was constructed on Lincoln avenue in front of plaintiff's premises in 1915; that it is not only a part of the Ogden Street Railway system but is also a part of the interurban system extending from Ogden to Preston, Idaho, and freight as well as passengers have been carried thereon ever since said last-mentioned date. The road is operated by electricity. It has a spur connection with the Denver & Rio Grande Railway, which is exclusively for the transportation of freight into northern Utah and Idaho. The regular schedule is one freight train each way daily over the line to Idaho.

Whether or not plaintiff would have the right to institute an action to abate the nuisance, if such it could be called, for operating freight cars or making up freight trains in front of her premises as alleged in her complaint, is, in our view, immaterial here and should not be considered as a factor in our deliberation. She instituted her action, once for all, for the recovery of damages for the depreciation of the value of her property because of the construction and operation of

the railroad. The operation of freight trains on the road and the making up of freight trains in front of her premises undoubtedly enhanced the damages to which she would be entitled, assuming that her action had been seasonably commenced. It is also true, as alleged in her complaint, that the business of the railroad has increased in the last few years within the statutory period of limitations, but the increase has been the same in kind and differs only in degree, all of which must have been foreseen when the road was constructed and put in operation.

In view of the facts and the nature of the case we are of opinion it falls within the rule announced in *O'Neill v. Railroad,* 38 Utah, 475, 114 P. 127, and *Morris v. Railroad,* 36 Utah, 14, 102 P. 629. In the last-mentioned case, the plaintiff was an abutting owner upon one of the streets of Salt Lake City. The defendant operated a double track, standard gauge, steam railroad on the street in front of plaintiff's property. Plaintiff brought an action to recover damages for the depreciation of the value of her property because of the construction and operation of the railroad and divers injuries resulting therefrom. The statute of limitations was not involved in that case but the rule was announced that, by virtue of article 1, section 22, of the state Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation," the plaintiff was entitled to recover damages for such use of the street by the railroad company. It is exactly upon that principle that plaintiff in the instant case seeks to recover damages.

In the O'Niell Case, supra, the railroad company constructed its railroad on its own property but in such proximity to O'Niell's property that injury resulted from the operation of the railroad. O'Niell brought an action to recover damages for depreciation of its value. The defendant pleaded in bar the three-year statute of limitations. The road had been constructed within four years but not within three. Plaintiff had judgment, and defendant appealed.

This court held that the four-year statute applied and affirmed the judgment. In its opinion in the case, at page 480 of 38 Utah (114 P. 129), the court, after commenting on the rule announced in the Morris Case, said:

"We are clearly of the opinion that actions like the case of *Morris v. O. S. L. R. Co.*, supra, and one like the case at bar, fall within the provisions of section 2883, which provides for a four-year limitation in all cases that are not otherwise especially provided for."

It is true that, in both the Morris and O'Neill Cases, there was no contention that the railroad was not operated in an ordinary and careful manner, while here the contention is made that it was operated (especially for hauling freight) without authority and in such manner as to constitute a nuisance. But, as alleged in the complaint, it was a permanent nuisance and amounted to a taking and damaging of plaintiff's property for public use without just compensation. Plaintiff seeks to recover damages upon that theory by virtue of the constitutional provision to which we have referred. Counsel for appellant cite the following Utah cases, but fail to show their application to the case at bar. *Dooly Block v. Rapid Transit Co.*, 9 Utah, 31, 33 P. 229, 24 L. R. A. 610; *Cereghino v. O. S. L. R. Co.*, 26 Utah, 467, 73 P. 634, 99 Am. St. Rep. 843; *Stockdale v. Rio Grande W. R. Co.*, 28 Utah, 201, 77 P. 849; *Jordan v. Utah Railway Co.*, 47 Utah, 519, 156 P. 939; *Barboglio v. Gibson*, 61 Utah, 314, 213, P. 385; *Thackery v. Union Portland Cement Co.*, 64 Utah, 437, 231 P. 813.

None of the above-cited cases, except the Thackery case, has the slightest application to the issue presented here. The Thackery Case was one in which the plaintiff brought an action against the cement company for damages to his land and crops growing thereon and to his home, as a place of residence, by permitting small particles of cement, dust and smoke to escape and pass from appellant's plant and fall upon respondent's premises. The action was also for an abatement of the nuisance, but this feature of the case was

abandoned at the trial. The cement plant was constructed in 1909, and the action was not commenced until 1919. Defendant pleaded in bar the statute of limitations, which was the only question presented on appeal. This court held that the action was not barred. The case, however, is distinguishable from the case at bar in one particular, at least, and that seems to have been the controlling feature. This distinction is noted at page 440 (231 P. 814), as follows:

"It is shown by the testimony that the annoyance and discomfort to the respondent's premises is not continuous. If the plant is not in operation, necessarily no dust or smoke will emanate from it or pass over respondent's land. If the wind is not blowing towards respondent's land the dust and smoke will be carried in another direction. The extent of injury or annoyance at any particular time is dependent largely upon the extent to which the plant is in operation and the condition of the elements, particularly the direction of the wind, and upon other causes. The nuisance or annoyance created by the plant of appellant cannot therefore be said to be continuing. It is recurrent, dependent upon the causes indicated."

In the instant case, it is alleged in the complaint not only that the operation of the road as described, is a permanent nuisance, but the nature of the permanency is more particularly described by alleging:

"That said freight is handled in standard freight cars, in long trains, which stop for long periods of time and are switched back and forth, and stopped and started and passed over the said tracks during all hours of the day and night," etc.

There are other passages in the opinion in the Thackery Case from which it may be inferred that the court all the time had in mind the difference between a permanent nuisance and one which was merely recurrent, to which class the Thackery Case belonged. In that case, however, it appears that the parties, by stipulation or by acquiescence, tried the case upon the theory of a permanent injury, the measure of damages being the depreciation in the value of plaintiff's premises. There is another feature of the Thackery Case wherein it is distinguishable from the instant case. The

business of the cement company was not a public use. The right of condemnation did not exist. Hence it was not a case within the protection of the constitutional provision against taking or damaging private property for public use.

The general rule recognized by the great weight of authority appears to be that any damage to an abutting property owner from the operation of a railroad is a permanent damage, and, as stated by respondent—

"must be reckoned from the time the road is constructed and put in operation, and that but one action can be maintained for such damages, and in such action damages past, present, and prospective must be recovered, and that the statute of limitations begins to run as soon as the road is constructed and put in operation."

The damage consequent upon the construction and operation of a railroad, especially for the hauling of freight in long freight trains, is so well known and understood that its effect upon the value of abutting property can well be estimated when the road is constructed and put in operation. It may, to some extent, be a matter of speculation as to just what the actual injury may be, and for that reason the injured party, in estimating his damage, has the right to presume every possible kind of annoyance and injury that may result from the ordinary operation of the railroad. He most certainly can presume that the business of the road will increase, and that consequently the injury will be increased. The sole question will be : How much is the abutting property depreciated in value by reason of the construction and operation of the railroad as a permanent structure? For these reasons, the rule contended for by respondent appears to be the rule prevailing in practically every other jurisdiction of the country, as well as our own. In support of the rule respondent refers to many cases from among which we select the following: *Chicago & E. I. R. Co. v. McAuley,* 121 Ill. 160, 11 N. E. 67; *Chicago, etc., Ry. Co. v. Payne,* 192 Ill. 239, 61 N. E. 467; *Porter v. Midland Ry. Co.,* 125 Ind. 476, 25 N. E. 556; *Pratt v. Des Moines, etc., R. Co.,* 72 Iowa 249, 33 N.

W. 666; *Fowler v. Des Moines, etc., R. Co.*, 91 Iowa, 533, 60 N. W. 116; *Louisville & N. R. Co. v. Orr*, 91 Ky. 109, 15 S. W. 8; *Wood v. Michigan, etc., Ry.*, 90 Mich. 212, 51 N. W. 265; *James v. Kansas City*, 83 Mo. 567; *Chicago, B. & Q. v. O'Connor*, 42 Neb. 90, 60 N. W. 326; *Frankle v. Jackson* (C. C.) 30 F. 398.

The above cases cited by respondent are cases in which the statute of limitations was involved and the question determined in favor of respondent's contention in the instant case. Many other cases are referred to by respondent relating to other questions of secondary importance here.

In *Chicago & E. I. R. Co. v. Loeb*, 118 Ill. 203, 8 N. E. 460, 59 Am. Rep. 341, it was held that an action of this kind may be regarded as in the nature of one kind of condemnation proceeding, as all damages can be immediately estimated at the time of constructing the road and putting it in operation.

In *Doane v. Lake Street, etc., R. Co.*, 165 Ill. 510, 46 N. E. 520, 36 L. R. A. 97, 56 Am. St. Rep. 265, it was held that, as the operation of the road would be a continuing and permanent injury, a single recovery could be had for the whole damage, present and future. In that case, an injunction was denied, even though it appeared the road was constructed and operated on the street without authority.

In *Rockford & Interurban Ry. v. Keyt et al.*, 117 Ill. App. 32, the railroad was operated under the authority of a void ordinance. The ordinance expressly prohibited the carrying of freight, which provision was violated by the railroad company. The abutting property owner sued for damages, and over the objection of defendant, the trial court permitted plaintiff to prove a permanent depreciation of the value of his property. The court held that all damages could be recovered in one action, if the action was commenced before it was barred by the statute of limitations.

The difference between a mere temporary wrong and a permanent one by a railroad company in its use and occupation of a public street, and the different forms of actions applicable in such cases, is well stated in *Central Branch*

*Union Pac. R. Co. v. Twine,* 23 Kan. 585 (33 Am. Rep. 203). The opinion is by Mr. Justice Brewer. We quote the second and third paragraphs of the syllabus:

"(2) Where the wrong done by the railroad company is temporary in its nature, as in leaving cars unnecessarily on its track, or while engaged in the work of laying down its track, something existing today and not tomorrow, fluctuating in extent and depending on the ever-repeated action of the company, only such damages as have fully accrued prior to the commencement of the suit are recoverable, and none based upon any presumed continuance or repetition of the wrong.

"(3)· But where the wrong is of a permanent nature and springs from the manner in which the track, as fully completed, affects approach to the lot, then, notwithstanding the right which the state retains to control the manner of use of a highway by a raliroad company, even if deemed necessary to compel an entire removal of its track, the lot owner may treat the act of the company as a permanent appropriation of the right of access to his lot, and recover as damages the consequent depreciation in value of the lot; and in such cases the recovery of damages is a consent on the part of the lot owner to such manner of occupying the street, and concludes both him and any subsequent owner of the property."

Without quoting therefrom we call special attention to *Chicago, B. & Q. v. O'Connor,* 42 Neb. 90, 60 N. W. 326, a case strikingly similar to the case at bar, both as to the facts and the questions of law determined. The plaintiff, the same as here, alleged that the construction and operation of the road were without authority. The nature of the injury complained of was substantially the same as here, and the plea of the statute of limitations was the same. The court sustained the plea.

Many other cases are referred to by respondent from North Carolina, Texas, West Virginia, and Alabama which support respondent's contention on many of the questions involved.

Appellant's reply brief refers to numerous authorities tending to sustain her contentions that the railroad, as operated in the instant case, especially in the hauling and handling of freight, constituted a nuisance for which the

railroad company is liable and may be enjoined. Copious quotations are made from Joyce, Law of Nuisance, sections 246, 247, and 249. Appellant also refers to sections 217, 218, and 222 of the same author in support of the right of an individual to maintain an action for special injury. Many other sections from the same author are referred to, generally to the same effect. Reference is also made to the note to *City of New Orleans v. Joseph Lenfant et al.*, (La.) 29 L. R. A. (N. S.) 642, in which many cases are cited as to what constitutes a nuisance by a railroad company and the right of an abutting property owner to maintain an action therefor. The authority of these cases may be conceded, and, as far as what constitutes a nuisance is concerned, it may be conceded that they are in a greater or less degree applicable to the wrongs complained of in the case at bar. They do not, however, go to the meat of the controversy in the instant case. The question here is: When did plaintiff's cause of action acrrue and what is the law applicable thereto?

If the operation of defendant's railroad in carrying freight, switching back and forth, making up and breaking up freight trains in front of plaintiff's premises, and all without franchise or authority of any kind, constitutes a nuisance as contended by appellant, the questions are, first: Is it a permanent nuisance, as alleged by plaintiff in her complaint; and, second: When did such operations commence?

The evidence shows, without dispute, that freight has been carried over the road in front of plaintiff's property ever since the road was constructed in 1915; that a spur connection was made with the D. & R. G. R. R. in 1916 or 1917, which it appears is exclusively for the transportation of freight. The uncontradicted evidence shows that, since the connection with the D. & R. G. R. R., freight has been handled over the road in substantially the same manner as it was handled when the action was commenced in November, 1924. There has been some increase in the traf-

fic, but, as before stated, that was to be expected when freight operations first began. It is true, appellant alleges in her complaint that for more than three years prior to the commencement of the action freight has been handled in the manner alleged, and in examining witnesses upon that point counsel invariably asked what had been the manner of operating for the last three or four years. What the manner of operating was before that period was inquired into by respondent, and the answer was that it had been substantially the same, except as to some increase in the volume of business.

Wood on Limitations (3rd Ed.) § 180, makes the distinction between a temporary nuisance and a permanent nuisance and the remedy therefor. The rule announced bears sufficient analogy to the question presented here to justify quoting the section at length:

"The rule in reference to acts amounting to a nuisance is that every continuance is a new nuisance for which a fresh action will lie, so that, although an action for the damage from the original nuisance may be barred, damages are recoverable for the six years preceding the bringing of the action, provided such a period of time has not elapsed that the person maintaining it has acquired a presumptive right to do so. Thus, in an action brought to recover damages for injuries sustained by reason of the erection of a dam which set back the water of a stream and overflowed the plaintiff's land, it was held that, while the plaintiff was barred from recovering damages arising from the erection of the dam, he might recover for its continuance. The same rule was adopted in an English case, where the defendants as trustees of a turnpike road, who had erected buttresses to support it on the plaintiff's land, were held liable for its continuance there, although they had already been sued and responded in damages for its erection. But while this is the rule as to nuisances of a transient rather than of a permanent character, yet when the original nuisance is of a permanent character so that the damage inflicted thereby is of a permanent character, and goes to the entire destruction of the estate affected thereby or will be likely to continue for an indefinite period, and during its existence deprive the landowner of any beneficial use of that portion of his estate, a recovery not only may but must be had for the entire damage in one action, as the damage is deemed to be original; and as the entire damage accrues from the

time the nuisance is created and only one recovery can be had, the statute of limitations begins to run from the time of its erection against the owner of the estate or estates affected thereby."

But a case more pertinent, in our opinion, is that of *C. B. & Q. R. R. Co. v. O'Connor*, 42 Neb. 90, 60 N. W. 326, to which we have heretofore referred in another connection. As previously stated, the case bears close analogy to the instant case, both as to the facts and the questions of law involved. That was an action by an abutting property owner against the railroad company for divers wrongs, many of them of the nature complained of in the instant case. It was alleged in that case, the same as here, that the wrongs complained of were without authority from any person or corporate body authorized to grant authority. Notwithstanding the space required, we are constrained to quote the following excerpt from the opinion, commencing on page 100 (60 N. W. 329) :

"Now applying the principles enunciated in the foregoing cases to the case at bar, it is quite clear that, at the time the railway company first laid its tracks in Second street in front of the O'Connor property, there at once accrued to the owner thereof, if he was thereby damaged, a right of action against the railway company. This right of action would have been barred within four years from the date of the railway company's occupation of the street. If the owner of the O'Connor property had brought such action, the measure of his damages would have been the depreciation in the market value of the lot by reason of the occupation of the street in front thereof by the railway company, and this depreciation in value would have been the difference between the market value of the lot immediately before and immediately after the construction of the railway; and, in ascertaining this depreciation, the cuts or fills made in the street in front of the property, the proximity of the track to the front of the lot, the danger of fire from passing trains, the probability of damage to the house on the lot from the jars of passing cars and engines, the inconvenience to the occupants of the property by the presence and proper and ordinary use of the railway track, the annoyance from smoke, cinders, and dust from passing trains and engines, the noises from the proper operation of the road, such as the roar of trains, the sounding of whistles and the ringing of bells, would have all been elements for consideration in determining how much the occupation

of the street by the railway had diminished the value of the O'Connor property. In other words, every fact and circumstance connected with the usual and proper operation of the road in front thereof for all time that would have influenced the market value of the property in the mind of a good-faith intending purchaser thereof would have been proper for consideration; but all elements of damages which would or might ensue to the O'Connor property by reason of the building in front thereof of the railway and its continuous and proper operation would have been included in the appraisement judgment or settlement of the damages and the reason for this is that it is a matter of common knowledge that a railway cannot be operated without noise and smoke and soot, nor can heavy cars and engines be propelled over iron tracks without jarring buildings in close proximity thereto. All these things were within the realm of what would probably result from the proper and ordinary operation of the railway as first constructed, and entered into and formed a part of the damages which the O'Connor property sustained by reason of the location and use of the railway in the street. But if, after the railway company had laid its tracks in Second street, and after the damages caused thereby to the O'Connor property had accrued and been adjudicated or settled, it had built an embankment in the street in front of the O'Connor property, or had made a cut in said street in front thereof for the use of its railway tracks then the building of such embankment or the making of such cut would have been an additional burden to the O'Connor property presumably not within the purview of the original location of the railroad, and had it produced an injury to the O'Connor property, it would have invested the owner thereof with an additional right of action therefor. This right of action would likewise have been barred within four years from the time of building such embankment or making such cut, and the measure of damages to the owner of the O'Connor property would have been ascertained in the same manner as his damages for the original location of the road."

It is not contended that the making up and breaking up of freight trains and switching back and forth for that purpose is not necessary in a railroad business operated for the carrying of freight. Plaintiff stood by for more than four years next preceding the commencement of the action without complaint or protest and knew that the business was being carried on in the manner complained of in her complaint. The business was carried on in that manner daily from the day when it first commenced, and she must

have known the business would be permanent, and, therefore, as alleged in her complaint, was a permanent nuisance and a permanent damaging of her property for a public use.

We are of opinion that plaintiff's cause of action was barred by the statute of limitations pleaded by defendant, and that the trial court committed no error in directing a verdict of no cause of action.

The judgment is affirmed with costs to respondent.

FRICK, CHERRY, and STRAUP, JJ., concur.

GIDEON, C. J., did not participate in this cause.