AMELIA STOCKDALE, WILLIAM H. STOCK-
DALE and ANNIE ELIZABETH STOCKDALE
—MIDDLEMISS, Respondents, v. THE RIO
GRANDE WESTERN RAILWAY COMPANY,
a Corporation, and THE ANHEUSER-BUSCH
BREWING ASSOCIATION, a Corporation, Ap-
pellants.[1]

### No. 1558. (77 Pac. 849.)

1. **Municipal Corporations: Powers: Streets: Use by**
   **Railroads.**
   A city council may grant franchises to railroad companies, au-
   thorizing them to make a reasonable use of the public
   streets of the municipality for the purpose of constructing
   and operating thereon railroads designed for the use of the
   public for transportation of passengers and freight.

2. **Same: Public Utility: Nuisance.**
   A switch track, which is part of a general railway system, and
   which may be used by any or all who have occasion to ship
   freight over it, and which is not designed for the exclusive
   use or convenience of any particular person or corporation,
   is—although, from its location and surroundings, only a
   limited number of persons will have occasion to use it—a
   public utility, and does not constitute, when laid in the
   public street, a public nuisance.

3. **Eminent Domain: "Taken."**
   Any substantial interference with private property which de-
   stroys or materially lessens its value, or by which the
   owner's right to its use and enjoyment is in any substantial
   degree abridged or destroyed, is a taking, within Const.
   art. 1, sec. 22, providing that private property shall not be
   taken or damaged for public use without just compensation,
   to the extent of the damage suffered, even though the title
   and possession of the owner remain undisturbed.

[1]Cereghino v. O. S. L. R. R. Co., 26 Utah 467, distinguished.

Stockdale v. Railroad.

**4. Same: Right of Railroad in Operating.**

A franchise giving a railroad company the right to occupy a street and sidewalk with its spur track does not give it power by which it can rightfully extend its track over the property of a shipper, and there maintain and operate it, to the irreparable damage of the property of an adjoining owner.

**5. Same: Nuisance: Remedy.**

The operation of a railroad switch track over property in a city, which results in the shaking of ground by the passage of engines and cars, and causes smoke and noise in close proximity to the premises of a property owner, is a nuisance within Rev. St. 1898, sec. 3506, providing that anything obstructing the free use of property, so as to interfere with its comfortable enjoyment, is a nuisance, entitling any person whose property is injuriously affected thereby to an injunction, as well as to damages.

**6. Same.**

Under Const. art. 1, sec. 22, providing that private property shall not be taken or damaged for public use without just compensation, a party whose property is about to be specially damaged in any substantial degree for public use has the same rights and is given the same remedies for the protection of his property from the threatened injury as would be accorded him if his property was actually taken and appropriated for public use.

**7. Same: Rights of Property Owner.**

Losses and inconveniences suffered in common with the general public by reason of the operation of a public utility, such as a railroad in the vicinity of one's premises, do not entitle the property owner to damages or injunctive relief.

**8. Same: Taking or Damaging Property: Condemnation Proceedings Necessary.**

A railroad cannot subject private property in a city to the burdends to which it will be subjected by the running of cars and engines over a switch laid over adjoining property, without proceeding under the law of eminent domain, as contemplated by Const., art. 1, sec. 32, prohibiting the taking or damaging of private property for public use without just compensation, and the statutes of the state.

BARTCH, J., dissenting in part.

(Decided August 11, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. T. Marioneaux,* Judge.

Action to restrain defendants from operating and using a certain steam railway track in proximity to plaintiffs' property. From a judgment in favor of the plaintiffs, the defendants appealed.

MODIFIED.

*Messrs. Sutherland, Van Cott & Allison* for appellant railway.

*D. B.–Hempstead, Esq.,* for appellant association.

*Arthur F. Thomas, Esq.,* for respondents.

### STATEMENT OF FACTS.

This action was brought to restrain defendants from operating and running cars over a certain steam railway track, known and designated as a spur or switch track, which track is situated to the south of, and in close proximity to, plaintiffs' premises, upon which there are two dwelling houses (cottages) owned and occupied by the plaintiffs, and by other parties who are tenants of plaintiffs. These premises are twenty rods in length by five rods in width; that is, they have a frontage of five rods, which faces west on what is known as Fourth West street, in Salt Lake City, Utah. One of the cottages is of brick, and the other is a frame structure. The brick cottage is near the southwest corner of the premises mentioned, and faces west. It has a door and window at the rear or east end, and two windows in the south side, which face the switch track in question, which track passes on a curve within twenty-five feet of the house, and continues east nearly the entire length of plaintiffs' premises, and within five feet thereof.

The third, fourth, and a part of the fifth finding of fact by the trial court, and over which there is no controversy, are as follows:

"(3)   That since the twelfth day of September, 1874, the plaintiffs have been the owners and in the actual possession of the north half of lot 4 [then follows a full description of the property], situated on Fourth West street between Fifth and Sixth South streets; that on said premises, for several years prior to the commencement of this action, there have been, and now are, erected two dwelling houses occupied by the plaintiffs and other tenants, said houses fronting on Fourth West street, and facing west; that situated in the same way, and in the same block, south of plaintiffs' premises, are other houses belonging to and occupied by other people; that the value of plaintiffs' said land and houses is several thousand dollars.

"(4)   That for a long time prior to the commencement of this action the said defendant Anheuser-Busch Brewing Association was, and now is, the owner of the south half of lot 4, block 29, . . . adjoining the plaintiffs' premises on the south, and that thereon it has partially erected a large warehouse for the purpose of receiving and shipping beer, and the bottling of the same, in connection with its main private business, and for the purpose of conducting therein a private beer-handling business; that about sixty-five feet in front of said lots of plaintiffs and the defendant Anheuser-Busch Brewing Association, and about five feet from the middle of said Fourth West street, the defendant the Rio Grande Western Railway Company maintains its Park City branch line of railway, and that from said line of railway said defendant Anheuser-Busch Brewing Association on the twenty-fifth of July, 1903, by petition in writing, applied to the city council of Salt Lake City, Utah, to permit said Rio Grande Western Railway Company to construct a switch track or spur from said line on Fourth West street over and across the east side of said street and its sidewalk, in,

to, and over the land of said defendant Anheuser-Busch Brewing Association, to its warehouse on said lot 4; . . . . that on the fifth day of October, 1903, . . . . said city council of Salt Lake City duly passed, and on the ninth day of October, 1903, the mayor of said city duly approved, an ordinance granting to said defendant the Rio Grande Western Railway Company the franchise and right of way to construct and operate a spur or switch track on and across Fourth West street, between Fifth and Sixth South streets, in Salt Lake City, Utah, on and into said defendant Anheuser-Busch Brewing Association's premises.

"(5) That from the main line of the Park City branch of said defendant railway company on the same street, about fourteen feet south of the starting point of the . . . contemplated spur, a spur or switch is already constructed and in operation, crossing and cutting said street, so that, when said spur crosses the sidewalk of said street, it is within fifty-nine feet of the switch track constructed by defendant."

The court further found, and the evidence supports the finding, "that the operation of said switch track by running cars thereon will impose great burdens upon plaintiffs' premises, because of the shaking of the ground by the passage of engines and cars over the track, and by reason of the smoke and noises incident to the operation of said steam railroad, all in such close proximity to plaintiffs' houses and premises that its operation would be a private nuisance to these plaintiffs, and would thereby greatly diminish the value of plaintiffs' premises." The court also found that the operation of the spur track under consideration, in connection with the switch track immediately south thereof, would be an unreasonable obstruction of the ordinary use of said street and sidewalk for public travel, and the plaintiffs' right of access to their premises would be greatly impaired thereby.

The record shows that the railway company does not own the ground on which the spur track is built

which leads into a coalyard immediately south of the premises of the Anheuser-Busch Brewing Association, and that the coal company, on whose land the last-mentioned switch track is constructed, will not permit the railway company to remodel the track so that freight can be shipped over it to the warehouse of defendant Anheuser-Busch Brewing Association.

The court found, as a conclusion of law:

"(1) That the said franchise granted by said city council . . . to said defendant railway company to construct a switch track or spur across the said street in and to and over said defendant Anheuser-Busch Brewing Association's premises was wholly without and beyond the power of said city council, and that no such power is delegated by law to said city council; . . . that said grant did unreasonably obstruct said street and sidewalk on said Fourth West street."

"(4) That the plaintiffs are entitled to a decree as prayed for in their complaint, to enjoin permanently said defendants from the operation of said spur track."

A decree was entered perpetually enjoining defendants from maintaining and operating the switch track under consideration, and ordering defendant railway company to remove the same from the street and sidewalk. From the judgment and decree, this appeal is taken.

McCARTY, J., after making the foregoing statement, delivered the opinion of the court.

The first question presented by this appeal is, did the city council exceed its power by granting to defendant railway company a franchise to construct and operate the switch or spur track in question? The power of a city council to grant franchises to railroad companies to make a reasonable use of the public streets of the municipality, for the purpose of constructing and operating thereon railroads designed for the use of the public for the transportation of passengers and freight, is so well settled that a discussion of this

doctrine, which is fundamental, seems unnecessary. Plaintiffs, however, contend that the switch track under consideration is designed wholly for the exclusive use and benefit of a strictly private enterprise, and that its maintenance and operation would in no way subserve the public interest, and would have no relation whatever to the public convenience or welfare, and that therefore it does not come within the foregoing rule. We do not think the record supports this contention. True, the franchise was granted the railway company to build the switch track in question on the petition of the Anheuser-Busch Brewing Association, but the petition does not even suggest that the switch is designed for the exclusive use of the petitioner. That it is not so intended is apparent from the city ordinance granting the franchise, which provides, in part, as follows: "A franchise and right of way is hereby given and granted to the Rio Grande Western Railway Company, its successors and assigns, to lay, construct, and operate a switch or spur standard gauge railroad track leading from a convenient point on . . . its railroad line on Fourth West street to and onto lot 4, block 29, in Plat 'A,' Salt Lake City Survey." The ordinance provides that the track shall be laid, maintained, and operated under certain restrictions as to grade crossings, culverts, etc., but no mention is made of the defendant Anheuser-Busch Brewing Association; nor is it even suggested anywhere in the ordinance that the use of the switch track is to be limited or in any wise restricted from that made by the balance of the railway system of which it forms a part. In fact, the record affirmatively shows that its maintenance and operation will be subject to and controlled by the same rules and regulations as the balance of the system. Joseph H. Young, the general superintendent of the defendant railway company, testified—and his testimony on this point is not disputed—that the property in the vicinity of the switch tracks is largely devoted to warehouse purposes, and that this spur is not only intended for the

purpose of freight to and from the warehouse of the brewing association mentioned, but to and from any and all other warehouses that may hereafter be built in the vicinity of the spur. Neither do we think the maintenance of the spur track under the circumstances and conditions as shown by the record is an unreasonable use of the street for trackage purposes.

Plaintiffs cite and rely upon the case of Cereghino v. Oregon S. L. R. Co., 26 Utah 467, 73 Pac. 634, recently decided by this court, which they insist is decisive of the case under consideration. In that case the city council of Salt Lake City, on petition of the Consolidated Wagon & Machine Company, a private corporation, granted by resolution to the railway company a franchise to construct on one of the public streets of the city a switch track to be used for the exclusive benefit and convenience of said wagon and machine company. The record in that case also showed there were three other switch tracks on the street in the vicinity of plaintiff's property, and that the construction of an additional switch track immediately in front of, and in close proximity to, her property, would have shut it off from the street by a network of railroad tracks, the operation of which would have greatly depreciated the value of, if not entirely ruined such property, for the purposes to which it was devoted. In deciding the case this court held that the city council had not properly exercised its power in granting the franchise, and that it could not lawfully permit the use of the public streets for exclusively private purposes, to the detriment of the public, and damage to private property abutting on such street. In the case at bar, as hereinbefore observed, the switch track complained of is a part of a general railway system, and may be used by any and all who may have occasion to ship freight over it, and is not designed for the exclusive use, benefit and convenience of any particular person, company, or corporation. True, it is evident from its location and surroundings that only a limited number of persons and business

institutions will have occasion to use it, but that does not make of it a private undertaking. The test is, will any and all persons and business institutions who may have occasion to do so be permitted to use it? That is, will the track be open to public use generally? If so, then it is a public utility. Clarke v. Blackmar et al., 47 N. Y. 150; Lewis, Eminent Domain, 171; Kettle River R. Co. v. Eastern Ry. Co., 41 Minn. 641, 43 N. W. 469, 6 L. R. A. 111. In the case of Chicago, B. & M. Ry. Co. v. Porter, 43 Minn. 527, 46 N. W. 75, it was held that "the character of the use in the case of a railroad or railroad track does not depend upon the amount of business or number of persons who have occasion to use it, but on the right of the public to the benefit of it."

In Phillips v. Watson, 63 Iowa 28, 18 N. W. 659, this same general question was involved, and the court said: "The character of a way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which the right is exercised. If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small." And likewise in the case of People v. Blocki, 203 Ill. 363, 67 N. E. 809, it was held that "all termini of tracks and switches are more or less beneficial to private parties, but the public character of the use of the tracks is never affected by this. If they are open to the public use indiscriminately, and under public control to the extent that railroad tracks generally are, they are tracks for public use." Tested by this rule, which is supported by the weight of authority, the findings of the trial court that the city council exceeded its authority in granting the franchise, and that the spur track is a public nuisance, are erroneous.

Appellants' next contention is that the court erred in finding that the operation of the switch track will be a taking of plaintiffs' property, and a continuous trespass thereon, and that plaintiffs are entitled to injunc-

tive relief. It is not shown, nor do we understand respondents to claim, that the operation of that part of the switch track extending from the main line of railway to the point where it enters the premises of defendant Anheuser-Busch Brewing Association, which point of entrance is about the same distance from plaintiffs' premises as the main line, would materially damage their property, or subject them to any inconvenience, other than that suffered by others who may have occasion to use the street and sidewalk. But it is insisted— and there is evidence in the record that supports the contention—that the operation of that part of the spur track which is entirely within the premises of the defendant Anheuser-Busch Brewing Association, and passes within twenty-five feet of the brick house mentioned in the statement of facts, and then extends nearly the entire length of plaintiffs' premises, and within five feet thereof, would not only materially depreciate the value of said premises, but the shaking of the house by the passing engine and freight cars, and the smoke and cinders from the engine, would be a continuous source of discomfort and annoyance to the plaintiffs and their tenants. Therefore the important question is, are the plaintiffs, under these circumstances and conditions, entitled to injunctive relief? Appellants insist, on the one hand, that as the spur track was constructed in pursuance of a franchise regularly granted by the city of Salt Lake, and is, in contemplation of law, a public highway, respondents' only remedy, if they have one, is by an action at law for damages; while, on the other hand, respondents, with equal vigor, contend that the maintenance and operation of the track will amount to a continuous trespass upon their property, to their discomfort and irreparable damage, and that by the terms of section 22, art. 1, of the Constitution of this State, which provides that "private property shall not be taken or damaged for public use without just compensation," they are entitled to equitable relief to restrain the threatened trespass. The authorities do not all

agree as to just what will amount to a taking of private property, within the meaning of the provision of the Constitution of the United States, which provision, with an occasional change in the phraseology, has been incorporated into the Constitutions of the several states, namely, "Private property shall not be taken for public use without just compensation." Many of the earlier cases adopted the more restricted construction, and held that, to bring a case within the foregoing provision of the Constitution, there must be an actual physical appropriation of the private property sought to be converted to a public use; but, as stated in 1 Lewis on Eminent Domain (2 Ed.), section 57, "the law, as to what constitutes a taking, has been undergoing radical changes in the last few years." And the great weight of judicial authority, which we believe to be supported by the better reason, and which is more in accord with our ideas of equity and natural justice, holds that any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed, is, in fact and in law, a taking, in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remain undisturbed. Rigney v. Chicago, 142 Ill. 64; Vanderlip v. City of Grand Rapids et al., (Mich.) 41 N. W. 677, 3 L. R. A. 247, 16 Am. St. 597; City of St. Louis v. Hill, 116 Mo. 527, 22 S. W. 861, 21 L. R. A. 226; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; Pearsall v. Supervisors, 74 Mich. 558, 42 N. W. 77, 4 L. R. A. 193; Omaha v. Kramer, 25 Neb. 489, 41 N. W. 295, 13 Am. St. 504.

Some of the earlier decisions of the Supreme Court of the United States and some of the State courts, as well as the opinions of most of the text-writers who have discussed this question in their treatises on constitutional law and the law of eminent domain, have declared in favor of the more liberal and broader construction of

the foregoing constitutional provision. Eaton v. B., C. & M. R. R. Co., 51 N. H. 504, 12 Am. Rep. 147; Thompson v. Androscoggin Co., 54 N. H. 545; Grand Rapids B. Co. v. Jarvis, 30 Mich. 308; Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557; Lewis, Eminent Domain (2 Ed.), section 91e, and cases cited in note. Mr. Sedgwick, in his work on Constitutional Law (2 Ed.), pp. 462, 463, says: "The tendency under our system is too often to sacrifice the individual to the community, and it seems very difficult, in reason, to show why the State should not pay for the property of which it destroys or impairs the value, as well as for what it physically takes. If, by reason of a consequential damage, the value of real estate is positively diminished, it does not appear arduous to prove that, in point of fact, the owner is deprived of property, though a particular piece of property may not be actually taken." Elliott on Roads & Streets (2 Ed.), section 202; Mills on Eminent Domain (2 Ed.), sections 30-32. Several of the States, in order to set at rest this much-vexed question, and at the same time give additional security to private property within their respective commonwealths, have had incorporated into their several Constitutions the word "damaged," or its equivalent, and associated it with the word "taking;" thereby providing that private property can be neither taken nor damaged for public use without just compensation.

Appellants insist that, the city council having lawfully granted the defendant railway company a franchise to maintain and operate the spur track in question, plaintiffs' only remedy is by an action at law to recover such damages as they may sustain by its operation, and cite the case of Cereghino v. Oregon S. L. R. Co., supra, in support of their contention. The Cereghino case is not in point, and has no application to the issues in this case, only so far as the right of defendant railway company to occupy the street and sidewalk with the switch track is involved.

While the franchise granted in this case gives the

defendant railway company the right to occupy the street and sidewalk with its spur track, it does not clothe it with power by which it can rightfully extend the track on and over the premises of its codefendant, and to maintain and operate it to the irreparable damage of plaintiffs' property. And the evidence shows that the operation of that portion of the spur track which is constructed on the private property of the Anheuser-Busch Brewing Association would be a source of great annoyance and discomfort to plaintiffs and their tenants, and would, in effect, as found by the court, amount to a private nuisance. Section 3506, Revised Statutes 1898; Wood on Nuisances (2 Ed.), p. 127; Lewis on Eminent Domain, section 152.

Under the provisions of the Constitution of this State hereinbefore referred to, a party whose property is about to be specially damaged in any substantial degree for public use has the same rights and is given the same remedies for the protection of his property from the threatened injury as would be accorded him if his property was actually taken and appropriated for such use. That such is the spirit and intent of the foregoing provision of the Constitution is evident from the tone and character of the extended discussions on this question in the constitutional convention at the time the provision was adopted and became a part of the organic law of the State. Pages 326-344, 623-654, Proceedings Const. Conv. 1895.

We do not wish to be understood as holding that every inconvenience that an individual may be subjected to in the possession and enjoyment of his property because of the construction and operation of a railroad or other public utility in the vicinity of his premises entitles him to damages or injunctive relief. The rule is well settled that no recovery can be had for losses and inconveniences which are suffered in common with the general public. Elliott on Roads & Streets

(2 Ed.), section 262; Lewis on Eminent Domain (2 Ed.), section 236a.

Before the appellant railway company can subject the property in question, or any part thereof, to the burdens to which it would be subjected by the running of cars and engines over the switch referred to, it must **8** proceed under the law of eminent domain, as contemplated by the foregoing provision of the Constitution, and as required by the statutes of this State.

The judgment of the district court, so far as it affects that portion of the switch track located on the public street and requires the removal of the entire spur, is vacated, and said court is directed to so modify its findings and decree; but the judgment, in so far as it restrains the defendant railway company from operating cars and engines on the portion of the switch track located on the premises of the Anheuser-Busch Brewing Association, is affirmed. The costs of this appeal are taxed against the appellants.

BASKIN, C. J., concurs.

BARTCH, J. (concurring in part and dissenting in part).—I concur in that portion of the opinion which holds that the findings of the trial court that the city council exceeded its authority in granting the franchise to construct a spur track upon the street, and that the spur track is a public nuisance, are erroneous, and in that portion of the judgment of this court which vacates the judgment of the lower court in so far as it affects "that portion of the switch track located in the public street, and requires the removal of the entire spur;" but I dissent from the remaining portion of the opinion and judgment herein, because I do not think the facts in this case warrant interference by injunction, nor a proceeding under the law of eminent domain. If the operation of the spur should, through carelessness or otherwise, cause injury to the plaintiffs, they have a remedy in damages.