**UTAH STATE ROAD COMMISSION,**
**Plaintiff and Appellant,**

v.

**Carlos JOHNSON et al., Defendants**
**and Respondents.**

**No. 14225.**

Supreme Court of Utah.

May 20, 1976.

Vernon B. Romney, Atty. Gen., Donald S. Coleman, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Brant H. Wall, Salt Lake City, for defendants and respondents.

ELLETT, Justice:

This is a condemnation matter. The jury awarded damages to the landowner in the amount of $95,000. The trial court ordered a new trial unless the owner would consent to a remittitur in the amount of $3,000.

■ The Road Commission appeals claiming that the trial court had no authority to grant a new trial conditionally. There is no merit to this claim. The appellant has the same right to appeal which he would have had, had the court denied the motion for a new trial outright. The fact that the landowner consented to a reduction of $3,000 does not harm the appellant—it has no effect on the chances of reversal; and if it loses the appeal it is $3,000 better off by reason of the remittitur.

The law is set out in 25A C.J.S. Damages § 201 as follows:

> Where a verdict is excessive, the prevailing party may voluntarily remit the excess and judgment may be entered for the residue. Also a conditional provision for a remittitur is frequently made by the court, as where the trial court makes a remittitur a condition of the denial of a new trial . . .

(See also 66 C.J.S. New Trial § 209.) Utah follows the rule set out above. In the case of *Duffy v. Union Pacific R. Co.,*[1] this court said:

> Section 104–40–2(5), U.C.A.1943 [Now Utah Rules of Civil Procedure, Rule 59(5)], provides that a verdict of a jury may be vacated and a new trial granted by the trial judge when damages are excessive and appear to have been given under the influence of passion and prejudice. Trial courts of this and other states grafted on to that provision the right of the trial court to refuse to grant a new trial when the damages were excessive, if the winning party would consent to a reduction. The provision was thus extended by judicial decision to permit trial courts to require a remission of part of the damages or suffer the consequences of a new trial.

■ The appellant also claims it was error for the court to allow the landowner to testify that the property was worth $120,000 to $125,000. The basis he gave for the value was: "Well, it is my life's work and it provided me a good living. . . . I know what it is worth to me." Counsel then asked the witness: · "And is that what your testimony is based on, Mr. Johnson, is that what the subject property is worth to you?" and the witness answered, "yes."

The basis upon which the owner stated the value of the property was not permitted by law. What the property is worth to a seller is not a correct basis for an opinion,[2] and the motion to strike the answer should have been granted.

An expert witness for the landowner testified that the value of the taking was $92,000, while the expert for the appellant placed the value at $54,000. The jury awarded $95,000 showing that the testimony of the landowner had an influence on the verdict.

The court refused to grant a new trail if the landowner would consent to a $3,000 remittitur. The remittitur was agreed to by the respondent and this appeal followed.

This court has said:

> An owner of property is always entitled to testify as to its value, and to express an opinion as to its value in condemnation proceedings. An owner does not have to qualify as an expert, nor be engaged in buying and selling real estate.[3]

However, in the case of *Utah State Road Commission v. Steele Ranch*[4] an exception to the rule announced in the *Provo River* case was noted.

The case of *State v. Larson*[5] shows the trend of the recent decisions and we think it correctly sets forth the law:

> An owner of property may testify as to its value, . . . upon the assump-

1. 118 Utah 82, 218 P.2d 1080 (1950).

2. U. S. v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946).

3. *Provo River Water Users Assn. v. Carlson et al.*, 103 Utah 93, 133 P.2d 777 (1943).

4. 533 P.2d 888 (Utah 1975).

5. 54 Wash.2d 86, 338 P.2d 135 (1959).

tion that he is particularly familiar with it and, because of his ownership, knows of the uses for which it is particularly adaptable. . . . However, when, as here, the owner has not used his intimate experience with and knowledge of the land's uses as a basis for determining its fair market value, but has obviously determined it upon the application of an improper formula, his opinion fails to meet the test and, therefore, has no probative value.

Another case in point is that of *Commonwealth, etc. v. Hopson* [6] which holds:

> The landowner should not be permitted to testify as to market values unless he qualifies in accordance with the holding in *Commonwealth v. Fister.*

That case [7] held: "The net effect of our decision on this question is that the owner of real estate shall *not be presumed* adequately qualified to express an opinion of market values by reason of ownership alone."

Another case of interest on the point is that of *Rotge v. Murphy,* [8] wherein the court stated:

> Appellant next complains because she was not permitted to testify to the market value of the lots in question. Appellant did not show herself to be sufficiently familiar with the cash market value of these lots to qualify her to express an opinion as to their value, and therefore the court did not err in excluding her testimony as to the value of the lots.

■ Because the court permitted the testimony of the owner to be given over objection and failed to strike it on motion it committed error which clearly had an improper effect on the jury. The reduction of the verdict to the figure testified to by the respondent's expert witness does not cure the error. No one knows what the verdict would have been without the evidence given by the owner.

The judgment is reversed and the case is remanded for a new trial. Costs are awarded to the appellant.

HENRIOD, C. J., and CROCKETT, J., concur.

MAUGHAN, Justice (dissenting):

Under the law and the facts the judgment of the trial court should be affirmed.

The defendant landowner testified extensively as to the history of his property. He described the physical layout of the property, its use, including the connection to the utilities, and the relevant zoning laws. He explained he erected a structure on the property in 1955 which he utilized as a cafe and tavern. He operated the cafe for a period of two years, and thereafter rented it; his tenant had paid him $200 per month for the past 12 years. The tavern he operated for many years. In 1971, a nonprofit private club occupied the tavern area, which defendant initially managed. Thereafter, he rented the tavern area for $500 per month to the club; in addition, he procured parttime employment with the club.

After establishing the landowner's intimate knowledge of his property and its uses, his counsel queried:

> Q (By Mr. Wall) Do you, Mr. Johnson, have an opinion of the fair market value of your property based on the testimony and all of the matters you have told the Court about as of March 1, 1974?
>
> A The full value?
>
> Q Yes, the entire value of the total package, the land and total improvements?
>
> A A hundred twenty to a $125,000.
>
> Q What do you base that on?

6. 396 S.W.2d 805 (Ky.1965).

7. 373 S.W.2d 720 (Ky.1963).

8. 198 S.W.2d 932 [Court of Civil Appeals (Texas 1946)].

A  Well, it is my life's work and it provided me a good living.

Q  Would you have sold it for anything less than that?

A  No.

MR. COLEMAN: Objection, immaterial.

THE COURT: The objection is overruled, he has answered. It goes to his his opinion, it goes to the weight and not the admissibility.

On cross-examination, the State, by counsel, queried:

Q  Mr. Johnson, with regard to your estimate of the value of the property and of the improvements located on the property, you indicated that your estimate was based on your life's work. What do you mean by your life's work? Are you an appraiser, are you a real estate salesman?

A  No, I don't think I am a real estate salesman or an appraiser.

Q  Do you consider yourself knowledgeable as far as the valuation or appraisal of property is concerned?

A  I know what it is worth to me.

Q  And is that what your testimony is based on, Mr. Johnson, is this what the subject property is worth to you?

A  Yes.

MR. COLEMAN: Your Honor, based on the testimony of Mr. Johnson, I move to strike his testimony as to value because it is based on immaterial foundation.

THE COURT: Motion is denied, it may remain. Again, it goes to the weight to be given and not to admissibility.

Q  (By Mr. Coleman) Mr. Johnson, then I assume from that that you did not go out into the market place and make a detailed examination or study of what other properties, similar to yours, may have sold for?

A  No, I never did.

\* \* \* \* \* \*

Q  Are you familiar with the term— are you familiar with the methods used by real estate appraisers in determining market value of property such as the cost approach to value, the market approach to value, the income approach to value, do you know what those terms—can you define them for us?

A  No I don't understand them.

On redirect examination, defense counsel asked:

Q  (By Mr. Wall) Mr. Johnson, counsel asked you if you were an expert, if you understood the concepts of appraising. You don't claim to be an expert, real estate appraiser, do you?

A  No.

Q  But you are the property owner; aren't you, or were?

A  Yes, sir.

Q  Do you think that over the 71 years you have lived you have acquired some knowledge of land value in Salt Lake County?

A  I do.

Q  Do you think you have acquired some knowledge of land values and property values in the area of this property?

A  Yes.

Q  Have you dwelled and relied upon that general knowledge and background in formulating your opinion of value?

A  That is right.

This court has consistently adhered to the rule as set forth in 5 Nichols On Eminent Domain (3rd Edition), Section 18.-4[2], pp. 18–106 to 18–114:

. . . the owner of the land taken is generally held to be qualified to express his opinion of its value merely by virtue of his ownership. He is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to have a reasonably good idea of what it is worth. The weight of his testimony is for the jury, and it is generally understood that the opinion of the owner

is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention, thus taking the place of the *ad damnum* of the writ in ordinary civil cases. . . [1]

In the note following Rule 56, Utah Rules of Evidence, it is stated: ". . . It is understood that this rule does not affect the right of the owner to testify as to its value." [2]

In the recent case of *State Road Commission v. Steele Ranch*,[3] this court cited a sentence of modification to the general rule in 5 Nichols On Eminent Domain (3rd Edition), Section 18.4[2], pp. 18–114, ". . . However, it has been held that mere ownership does not render a person competent to render an opinion as to value, unless he is in fact familiar with facts which give the property value. . . ." This court explained that such an exception to the general rule that an owner may testify to the value of his property was limited to specific circumstances, such as, "a person may come into ownership of property by inheritance, or otherwise, who may not have any realistic idea of its value. If it should so appear, the evidence would have no probative use and should be deemed incompetent; . . ." However, the statement of this *exception is obiter dicta,* since that opinion says: "In our case it does appear that Dr. Steele had had considerable experience in dealings in property."

The majority opinion in the instant case appears to hold that the trial court erred (a) by permitting the testimony of the owner to be given over objection and (b) by failing to grant the motion to strike the testimony.

As to (a) the ruling represents a radical departure from Utah law for it would mean that a landowner is not competent to be a witness and render an opinion as to the value of his land, until it has been affirmatively shown that he has knowledge of property values. The majority cites *Commonwealth v Fister.*[4]

In the *Fister* case, the landowner did not disclose any familiarity with property values in the neighborhood; he disclaimed knowledge of comparable sales. His estimates were to some extent based on how the condemnation would affect his business. The court acknowledged that generally an owner of property, either real or personal, is ipso facto qualified to give his opinion of its market value. The court stated that it was unable to find a persuasive reason for the arbitrary rule that mere ownership of realty automatically qualifies such owner to render a valid opinion concerning its market value at any given time.

The court observed that other lay witnesses are required to have a knowledge of property values generally or be acquainted with property values in the vicinity before expressing an opinion as to values. The view was expressed that an owner should meet the same qualifications required of his neighbors, i. e., the qualifications of the owner witness "must be affirmatively shown *before* his opinion of market values is expressed." Thus, the court departed from the general rule, and enunciated a principle of its creation: ". . . the owner of real estate shall *not be presumed* adequately qualified to express an opinion of market values by reason of ownership alone."

The other case cited in the majority opinion, *Rotge v. Murphy*,[5] to sustain the view that the property owner is not qualified as a witness to give an opinion as to

1. See *State Road Commission v. Dillree*, 25 Utah 2d 184, 478 P.2d 507 (1970); *Provo River Water Users' Assn. v. Carlson*, 103 Utah 93, 104, 133 P.2d 777 (1943), wherein it is stated: "An owner of property is always entitled to testify as to its value, and to express an opinion as to its value in condemnation proceedings. An owner does not have to qualify as an expert, nor be engaged in buying and selling real estate."

2. Our esteemed Justice Crockett was Chairman of the Committee.

3. 533 P.2d 888, 891 (Utah 1975).

4. C.A.Ky., 373 S.W.2d 720 (1963).

5. Tex.Civ.App., 198 S.W.2d 932 (1946).

value involved only a collateral attack upon a tax judgment. It had nothing whatever to do with condemnation. However, in Texas, in condemnation suits the opinion of the owner as to value of his property is admissible.[6]

The majority opinion is of the view that the trial court erred in its denial of the motion to strike the landowner's testimony. To sustain the opinion, the court cites *State v. Larson.*[7] A review of the *Larson* decision, in fact, sustains the ruling of the trial court in the instant case.

In *Larson,* it was stated to be improper to arrive at a conclusion concerning the value of property containing minerals, by multiplying the assumed number of cubic yards of material available, by a given price per unit. The landowner, Mr. Larson, based his opinion on such a calculation. His testimony was stricken. Affirming on appeal, the court stated:

> An owner of property may testify as to its value (without qualifying as an expert), upon the assumption that he is particularly familiar with it and, because of his ownership, knows of the uses for which it is particularly adaptable. [Citation] However, when, as here, the owner has not used his intimate experience with and knowledge of the land's uses as a basis for determining its fair market value, but has obviously determined it upon the application of an improper formula, his opinion fails to meet the test and, therefore, has no probative value.[8]

In *State v. Wilson,*[9] the ruling of the trial court, striking the valuation testimony of the owner, was sustained because the owner based his valuation solely on replacement cost without considering depreciation. The court relied on *State v. Larson,*[10] and said:

> . . . The owner of real property has a right to testify as to the value of

his property. The rationale behind this right is that one who has owned property is presumed to be sufficiently acquainted with its value and the value of surrounding lands to give an intelligent estimate of the value of his property. Because of this rationale no inquiry into knowledge is required to qualify the owner, although knowledge will affect the weight to be accorded his opinion. [Citations] In giving his opinion the owner is entitled to explain his valuation by relevant and competent methods of ascertaining value.[11]

In *City of Wichita v. May's Company Incorporated,*[12] the condemning authority urged the court to rule that a landowner to qualify as a witness must establish a foundation for his testimony by affirmative proof that he has knowledge developed from buying and selling real estate or an acquaintanceship and familiarity with land values in the neighborhood. The court responded:

> . . . The qualification of a landowner to testify as to the value of his land is not dependent on a showing of a knowledgeable background. It is based on the presumption the landowner has acquired knowledge by virtue of his ownership. Lack of knowledge is subject to exposure by the condemning authority. Regardless of what is disclosed, it does not affect the competency of the landowner to testify, but only the weight to be given to the testimony.

In the instant action, defendant, Johnson, as owner of the property, was qualified to be an opinion witness. His statement concerning his evaluation must be placed within the context of his other testimony. He had explained the uses to which the property had been devoted and the rentals he had derived therefrom. His statement on cross-examination that his evaluation

---

6. *City of Rockwall v. Mitchell,* Tex.Civ.App., 497 S.W.2d 378 (1973).

7. 54 Wash.2d 86, 338 P.2d 135 (1959).

8. At p. 136 of 338 P.2d.

9. 6 Wash.App. 443, 493 P.2d 1252 (1972).

10. Note 8, supra.

11. At pp. 1257–1258 of 493 P.2d.

12. 212 Kan. 153, 510 P.2d 184, 187 (1973).

was based on what it was worth to him must be related to all his other testimony. Considered in this light, his evaluation testimony cannot be deemed of such a nature as to be inappropriate proof or incompetent evidence as to the fact in issue.

TUCKETT, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.